## MURPHEY v. AMERICAN RY. EXPRESS CO. et al.

Circuit Court of Appeals, Third Circuit.
February 20, 1928.

No. 3680.

Patents ⬅328—1,086,203 and 1,196,749, for means for waybilling express shipments, held not infringed.

Murphy patents, No. 1,086,203 and No. 1,196,749, for method of waybilling express shipments by series of adhesive labels bearing numbers corresponding to printed numbers on general waybill, *held* not infringed by system providing separate waybills with labels for different packages.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Patent infringement suit by James A. Murphey against the American Railway Express Company and others. From a decree dismissing the bill, complainant appeals. Affirmed.

Arthur E. Paige and Frank E. Paige, both of Philadelphia, Pa., for appellant.

Munn, Anderson & Munn, of New York City, and Cyrus N. Anderson, of Philadelphia, Pa. (T. Hart Anderson and Charles A. Morton, both of New York City, of counsel), for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This suit is for infringement of certain claims of letters patent No. 1,086,203 and No. 1,196,749 issued to James A. Murphey. The trial court dismissed the bill and the complainant appealed.

The patents are, nominally at least, for "Means for Way-Billing." The complainant holds fast to the title description of *means* in order to distinguish the invention from a *system* and thereby avoid the hazard of losing on a patent for a scheme or plan or for mere rules of conduct. As the two patents relate to the same subject we shall discuss their inventions in composite form. Shortly stated, it is a manner of way-billing express shipments. It includes a series of adhesive labels to be pasted on articles to be shipped, each bearing a different printed number, for example, A–14, A–15, to correspond with printed numbers on a general way-bill embracing all shipments to one destination, the way-bill having appropriately designated spaces for the name of each consignee, the date of shipment, weight, tariff rates, the amount charged and for entries indicating whether the charge is to be collected or has been paid, and the labels having spaces for the date, the charge and for entries indicating whether the charge is to be collected or has been paid, from which the agent at destination can make deliveries and collect the proper charge without referring to the way-bill.

In order to show the novelty as well as the utility of his claimed invention which he calls "An Improvement in Means for Way-Billing," Murphey distinguishes his means or system, whichever it is, from the system then generally pursued by express companies where a "caller" stood at the edge of a pile of packages intended for shipment and read from each package the names of the shipper and consignee and called them to a "writer" who wrote or entered them in the way-bill, one after another, together with the charges paid or to be collected. The writer then gave the entry a number, which he called back to the caller, who marked it on the package. The numbered package was then shipped, the way-bill containing its number and the numbers of all other packages was then forwarded to the express company of-

fice at their destination. When a consignee called for a package, the clerk would look on the way-bill and, on finding his name, would learn the number of the package. This would enable him to find it and make delivery and collect the charges. Murphey says this system was bad because it required a search in the way-bill for information respecting each package, consumed time and therefore cost money and occasioned numerous errors between the caller and writer. He then says:

"To avoid such errors it has been proposed to write a separate way-bill for each package (which is what the respondents do) and send it with the latter."

The patentee continues:

"However, such practice would involve an expenditure of much more time and labor than the present system in that it would necessitate the preparation of forty times the present number of way-bills," assuming that in a given instance there are forty shipments.

That, ordinarily, would be true; but the respondents do it quickly by an ingenious arrangement of manifold slips and carbon sheets which includes a separate way-bill for each package made at the time the sticker is prepared for adhesion to the package, containing in both the requisite shipping information.

Then the patentee explains that:

"I propose to *retain* the present system of 'calling,' 'writing,' and inclusion of a *plurality* of items in each way-bill, (a thing the respondents avoid), but provide the 'writer' with a printed form constituting a way-bill (the respondents have none) having a series of distinctively numbered spaces and appropriately headed blank columns for matter descriptive of respective shipments, and provide the 'caller' with a series of separable adhesive labels, (the respondents use separable labels) to be attached to the respective shipments, respectively distinctively numbered in correspondence with the numbers on said way-bill (none of which the respondents have); each of said labels having spaces" for the data we have already noted, some of which the respondents have.

While he expressly disclaims an intention to limit himself to the precise details of the construction and arrangement described, that construction and arrangement constitute the only thing which the patentee discloses as his invention. If that arrangement as given is *not his invention*, then he must claim invention for the mere indication on stickers of matter found in way-bills, or, in other words,

invention for a theory, way or system, and not for means. That would be an idea or concept entirely different from what was involved in Johnson v. Johnson (C. C.) 60 F. 618, approved in Riter-Conley Mfg. Co. v. Aiken (C. C. A.) 203 F. 699, 703, which was an article in the form of an index book whose pages were ruled, headed, numbered and lettered in a way designed to produce definite and useful results. That was not an idea, theory or system but a thing in the patent law sense of a "manufacture," constructed with reference to specific details and was therefore patentable subject matter. Unless Murphey is to be credited with invention in the mere idea of transferring the data on way-bills to labels with an additional entry as to rates, that idea being a system as distinguished from a facility, manufacture or means, the respondents cannot be held to infringe the patents, for their system or practice or means involves no transfer at all but provides separate way-bills made each time, and at the same time, labels for different packages are prepared, and dispenses with the system of calling and writing and with the general way-bill to which Murphey adheres.

The learned trial judge correctly expressed the patentee's situation when he said:

"If his letters patent purport to give him a monopoly of the idea embodied in the forms of his system, our finding is that they are invalid; if the claims of his patent are restricted to the forms in which he has embodied his idea, then our finding is that the defendants have not infringed."

The decree of the District Court is affirmed.